Uploaded: 2024DEC20 07:25 Filed By: Bar# 76488 TSTRELKA Reference: EF-161081
E-Filed: 2024DEC20 RICHMOND CITY CC ILIPSCOMB at 2024DEC23 11:37 CL24005542-00
Case 3:24-cv-00909-HEH   Document 1-2   Filed 12/30/24   Page 1 of 13 PageID# 8

EXHIBIT A

**VIRGINIA:**

**IN THE CIRCUIT COURT OF THE CITY OF RICHMOND**

| | |
|---|---|
| **LYNSEY ANN PORTER,**<br><br>  Plaintiff,<br><br>v.<br><br>**BLUE RIDGE BANKSHARES, INC.** **d/b/a "BLUE RIDGE BANK"**<br><br>**Serve:**<br><br>  **Robert S. Janney**<br>  **Registered Agent**<br>  **12 S. Court Street**<br>  **P.O. Box 467**<br>  **Luray, Virginia 22835**<br><br>**And**<br><br>**G. WILLIAM BEALE,**<br>*In His Individual Capacity*<br><br>  Defendants. | Case No:<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Here this day comes the above-named Plaintiff, Lynsey Ann Porter ("Ms. Porter"), by counsel, and states as her Complaint against Defendant Blue Ridge Bankshares, Inc. d/b/a "Blue Ridge Bank" and G. William Beale, in his individual capacity, (collectively, "Blue Ridge Bank"), the following:

**I.  JURISDICTION AND VENUE**

1. This is an employment matter in which Blue Ridge Bank retaliated against Ms. Porter due to her engagement in protected whistle blower activities. This Court has jurisdiction over this matter as it arises from statutory authority, to-wit, Virginia's whistle

blower retaliation statute as codified under Va. Code § 40.1-27.3 ("Whistle Blower Act").

2. Pertinent to this matter, the acts and/or omissions of Blue Ridge Bank from which the following cause of action arises, occurred within the City of Richmond, Virginia.

3. Omissions and acts of Blue Ridge Bank were committed by Blue Ridge Bank management and/or those with the authority of Blue Ridge Bank to act in Blue Ridge Bank's interests.

4. Commissions of acts and/or omissions causing harm to Ms. Porter are attributed to Blue Ridge Bank under principles of agency law and theory.

5. Blue Ridge Bank is a Virginia corporation headquartered in the City of Richmond. Blue Ridge Bank employed Ms. Porter at all times relevant to this pleading.

6. G. William Beale is the President and CEO of Blue Ridge Bank. Mr. Beale had notice of Ms. Porter's activities described below and intentionally authorized every retaliatory and discriminatory decision affecting the employment of Ms. Porter.

7. As described below, Ms. Porter reported incidents at the workplace protected by Va. Code § 40.1-27.3. Ms. Porter reported activities she considered to be unlawful during the course of her employment at Blue Ridge Bank. Ms. Porter made these reports in good faith.

8. Retaliation is hereby claimed by Ms. Porter and imputed to Blue Ridge Bank for purposes of liability. Claims under the Whistle Blower Act require timely initiation of the claim. Ms. Porter has commenced this litigation within one (1) year of suffering retaliation, pursuant to Va. Code § 40.1-27.3.

## II.  THE FACTS

### A. Ms. Porter's Job Created Due to Federal Government's Findings of Impropriety at Blue Ridge Bank

9. On August 29, 2022, Blue Ridge Bank and the Office of the Comptroller of the Currency ("OCC") a federal agency within the U.S. Department of the Treasury that regulates banking, entered into a consent order.  This order addressed allegations of "unsafe or unsound practices, failure to correct previously reported problems in violation of [federal law], and deficiencies in the Bank Secrecy Act [and other federal laws and regulations]" on behalf of Blue Ridge Bank.

10. The consent order provided numerous duties for Blue Ridge Bank's future operations due to findings of numerous violations of law regarding Blue Ridge Bank's accounting practices to date.

11. Ms. Porter was hired on or about January 1, of 2023 to work as a Deputy BSA Officer and Financial Crimes Manager for Blue Ridge Bank.  Ms. Porter's job was a manifestation of the consent order. In other words, due to the duties mandated to Blue Ridge Bank by the OCC, Ms. Porter's job was created and filled.

12. "BSA" refers to the Bank Secrecy Act, 31 U.S.C. 5311 *et seq*., federal legislation that provides duties of financial transparency for banks to ward off embezzlement and other misuses of the banking system. BSA Officers serve to review accounting practices of banks and ensure federal compliance with the BSA, among other federal and state laws.

### B. Ms. Porter Reported Unlawful Activities at Blue Ridge Bank

13. During the course of her employment with Blue Ridge Bank, Ms. Porter reported frequent unlawful activities to her supervisors.  The very nature of Ms. Porter's job at Blue Ridge Bank was rooted in the notion of federal compliance.  In short, she was hired to

3

clean up a mess and took her job seriously.

14. Blue Ridge Bank management frequently dismissed or ignored her reports of unlawful activity at the bank. During her career, Ms. Porter reported unlawful activity to her supervisors in good faith at least once a week.

15. The list of compliance issues and security concerns reported by Ms. Porter is lengthy. The following are examples of conduct reported in good faith by Ms. Porter to Blue Ridge Bank.

   a. Blue Ridge Bank's refusal to provide transparency and access to all log entries of audited materials or obtain information for numerous accounting validation errors uncovered in the auditing process, all in violation of the Bank Secrecy Act, 31 U.S.C. 5311 *et seq*.

   b. Lack of accounting transparency in violation of regulations enforced by the Office of Foreign Assets Control ("OFAC"), a bureau of the U.S. Treasury Department. *See* 31 CFR 501.101-599.901 *et seq*. Ms. Porter referred to "OFAC" by name in her reports.

16. Despite her many reports to management, Blue Ridge Bank supervisors operated to block Ms. Porter at every turn, either by deflecting her messages and directives to others in a cycle of forwarding, or by undermining her work to prevent access to data and individuals with key information. Blue Ridge Bank management served to obfuscate the essential duties of her job as a BSA Officer.

17. On or about January 1, 2024, the acting Chief Risk Officer of Blue Ridge Bank resigned.

18. Seemingly due to this resignation, Blue Ridge Bank offered retention bonuses to Blue Ridge Bank staff to ensure their continued employment. Blue Ridge Bank offered this retention bonus to Ms. Porter in January of 2024.

### C. A "Promotion" is a Demotion; Economic Harm to Ms. Porter

19. That same month, Blue Ridge Bank management informed Ms. Porter that she would receive a promotion as a Vice President of Financial Crimes Customer Risk Manager that provided additional paid time off ("PTO") along with similarly situated co-workers.

20. This Vice President position included a job description with the following listed responsibilities:

**RESPONSIBILITIES:**
- Stay knowledgeable of new and changing regulations relating to high-risk customers such as FinTech relationships and money services businesses to ensure Bank policies and procedures are up to date.
- Serve as the point of contact for escalation of KYC or customer risk concerns/issues for both the Financial Crimes Compliance team and Lines of Business.
- Manage the day-to-day operations of the Bank's BOI, CIP, CDD, and EDD programs overseeing a team of individuals responsible for executing due diligence reviews.
- Develop, review, and update risk-based BOI, CIP, CDD, and EDD procedures to ensure compliance with regulatory requirements across the Bank throughout the lifecycle of the customer.
- Work collaboratively with the FLOD to ensure appropriate exception monitoring and reporting are in place for compliance with BOI, CIP, CDD, and EDD, and make recommendations on resolution and targeted training to senior management.

- Work collectively with Financial Crimes Compliance Programs team to develop new hire, role specific, and targeted training as identified.
- Advise all LOBs and non-bank financial partners on Know Your Customer (KYC) matters and review their procedures to ensure they are compliant with the Bank's BSA/AML policy.
- Create, track, and report Key Performance Indicators (KPIs) to monitor the efficiency of direct reports.
- Create, track, and report Key Risk Indicators (KRIs) to monitor the effectiveness of the team and proactively identify risks.
- Assist with EDD reviews of high-risk customers where required.
- Identify and implement process improvements, and develop risk controls, to improve the CDD/EDD and customer onboarding processes.
- Assist with internal and external audit and regulatory engagements and oversight work, including timely issue follow-up/remediation.
- Mentor and coach CDD/EDD analysts to help develop their skills.
- Support the development and delivery of on-going targeted KYC/CIP related training to the lines of business and applicable non-bank financial partners.
- Participate in Bank projects, new business initiatives, and product development/risk review as warranted by scope.
- Partner with business leaders to promote a collaborative compliance environment that helps the Bank meet its business goals while ensuring regulatory compliance.
- Other duties as may be assigned by the Director Financial Crimes Operations and OFAC

21. In the new role, Ms. Porter reported to a new supervisor, the Director of Financial Crimes. However, despite the switch and title change, Ms. Porter remained in the same department without any additional duties or new responsibilities.

22. Not long after Ms. Porter assumed her new role, she learned that she had been stripped of discretion in her day-to-day decision-making, had lost authority within the bank, received the same pay as before, did not receive a bonus, and never received additional PTO.

23. Blue Ridge Bank stripped Ms. Porter of her duties and transferred them to her supervisor, the Director of Financial Crimes. The supervisor kept Ms. Porter in the dark as much as possible regarding the goings-on of the office.

24. Ms. Porter's "promotion" was, in actuality and practice, a demotion with significant loss of authority and benefits compared to similarly situated coworkers.

25. In contrast to Ms. Porter, upon evidence and belief, similarly situated Vice Presidents received raises and bonuses upon their promotion to Vice President in addition to an increase of their PTO balances. Blue Ridge Bank denied these economic incentives to Ms. Porter.

26. The Blue Ridge Bank employee handbook incorporates a chart on page 64 that illustrates the difference in PTO provided to Vice Presidents at Blue Ridge Bank in contrast to "Non-VP"s:

|  | Non-VP | VP and Above |
|---|---|---|
| 1-5 Years | 120 hours (15 days) | 160 hours (20 days) |
| 5<10 Years | 160 hours (20 days) | 200 hours (25 days) |
| 10+ Years | 200 hours (25 days) | 200 hours (25 days) |

27. Despite working as a "VP and Above" as described in the chart, Ms. Porter received PTO of a "Non-VP" employee.

28. Ms. Porter learned from the employees in the IT department of Blue Ridge Bank that her Title change to Vice President had never been officially approved by Ms. Porter's supervisor in the company's personnel management system.

29. Ms. Porter forwarded this information to her supervisor requesting that her title be updated to Vice President as offered by Blue Ridge Bank. Ms. Porter's supervisor never approved her title change to Vice President despite actual notice of the issue.

### D. Additional Reports of Unlawful Activity

30. In May of 2024, the Director of Financial Crimes verbally informed Ms. Porter that risk assessment results generated by the department had highlighted numerous areas of regulatory violations that had not been corrected. Ms. Porter had reported a number of the exact financial improprieties herself leading up to the May 2024 assessment.

31. Ms. Porter again reported these unlawful activities to her supervisor and management of the bank, including the internal audit team.

32. Ms. Porter was informed that legal counsel would respond to her concerns directly, but she never received a response.

33. In the Summer of 2024, due to the overwhelming stress of her position, Ms. Porter began utilizing counseling services.

34. Blue Ridge Bank directed Ms. Porter to maintain confidentiality regarding what she had witnessed and the unlawful acts she had reported.

35. On July 14, 2024 Blue Ridge Bank's Chief Audit Executive emailed Ms. Porter and informed her that "[t]he Bank appreciates you bringing this matter to our attention and discussing it with me. We have conducted an investigation into your report and determined the appropriate course of action. . . I cannot provide detail on the outcome . . . the matter is now closed."

36. Blue Ridge Bank's Internal Audit team had informed Ms. Porter that they would address her concerns in a meeting to occur in the Summer of 2024. On July 23, 2024, the day before the scheduled meeting, Blue Ridge Bank's Chief Audit Executive informed Ms. Porter that he was cancelling the meeting. Ms. Porter requested the meeting be rescheduled, but Blue Ridge Bank never rescheduled the meeting.

37. On July 31, 2024, Ms. Porter emailed the Chief Audit Executive and stated, "[a]s

this investigation is directly related to my employment with BRB and the emotional stress that I am experiencing," she requested that information be shared with Blue Ridge Bank Human Resources.

38. The Chief Audit Executive sent a single-word reply:



(emphasis added).

39. In August of 2024, Ms. Porter became concerned that working at Blue Ridge Bank perpetuated a criminal enterprise.

40. Ms. Porter's therapist advised Ms. Porter to leave her employment because the work environment was unsafe for Ms. Porter.

41. Ms. Porter resigned from employment on August 2, 2024 citing the unsafe working conditions, an inability to trust her supervisor, and overall, the retaliation she experienced after filing "a formal whistleblower complaint."

9

42. Blue Ridge Bank retaliated against Ms. Porter for engaging in protected activities.

43. Ms. Porter performed her work in exemplary fashion and at least met, if not exceeded, the legitimate business expectations of Blue Ridge Bank.

44. At no time did Ms. Porter receive workplace discipline or a performance improvement plan from Blue Ridge Bank.

45. But for Ms. Porter's numerous protected reports under the law, Blue Ridge Bank would not have demoted Ms. Porter.

46. The retaliation of Blue Ridge Bank intended and forced Ms. Porter's resignation from employment prompting economic loss and hardship.

47. But for Ms. Porter's resignation, Blue Ridge Bank would have terminated her employment.

48. After leaving employment with Blue Ridge Bank behind her, Blue Ridge Bank contacted Ms. Porter via email dated August 2, 2024 and demanded she pay $6,701.25 to Blue Ridge Bank.

49. According to the Director of Engagement and Talent Acquisition, the claim represented a bonus paid to Ms. Porter (the retention bonus).

50. Other employees of Blue Ridge Bank had previously resigned and not been directed to repay funds to Blue Ridge Bank. Blue Ridge Bank singled out Ms. Porter and demanded payment of the funds in retaliation for her protected communications pursuant to Va. Code § 40.1-27.3.

## COUNT I:
## VIOLATION OF VA CODE § 40.1-27.3
### (Against Defendant Blue Ridge Bankshares, Inc. Only)

51. Ms. Porter incorporates by reference herein the preceding paragraphs of this Complaint.

10

52. Virginia Code § 40.1-27.3(A)(1) states that "[a]n employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee: Or a person acting on behalf of the employee in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official[.]"

53. Ms. Porter complained about numerous unlawful regulatory and accounting issues to her supervisors at Blue Ridge Bank. At all times Ms. Porter reported matters in good faith. These issues violated federal laws regarding the transparency of banking.

54. Blue Ridge Bank retaliated against Ms. Porter and discriminated against her by treating her differently than similarly situated co-workers.

55. Due to Blue Ridge Bank's retaliation, Ms. Porter suffered a demotion.

56. Due to Blue Ridge Bank's retaliation, Ms. Porter suffered a termination from employment.

57. Pursuant to Virginia Code § 40.1-27.3, Ms. Porter is entitled to "(i) an injunction to restrain continued violation of this section, (ii) the reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position, and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs."

### COUNT II: WRONGFUL DISCHARGE: *BOWMAN* CLAIM
### (Against All Defendants)

58. Ms. Porter incorporates by reference herein the preceding paragraphs of this Complaint.

59.     Ms. Porter's employment was terminated due to her refusal to perform an illegal act.

60.     Ms. Porter was terminated in violation of *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985).

61.     Mr. Beale had actual notice of Ms. Porter's protected acts pursuant to *Bowman* prior to making any decision to retaliate against her.

62.     By continuing her employment, Ms. Porter would have been assisting Blue Ridge Bank in the commission of federal violations of law.  Mr. Beale was aware of this.

63.     Defendants concerted and combined efforts to cause the termination of the employment of Ms. Porter in furtherance of Defendants intent and aim to continue violating federal laws that incur criminal penalties, all in violation of *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985).

64.     As a direct and proximate result of the actions of Defendants, Ms. Porter has suffered and will continue to suffer economic loss and emotional distress, shame, humiliation and embarrassment, and other non-pecuniary loss.

65.     Defendants also acted with actual malice or reckless disregard of the protected rights of Ms. Porter so as to support an award of punitive damages.

**WHEREFORE**, Plaintiff Lynsey Ann Porter prays for judgment against Defendant Blue Ridge Bankshares, Inc., d/b/a/ "Blue Ridge Bank", and G. William Beale, in his individual capacity, jointly and severally,  for (i) an injunction to restrain continued violation of this section, (ii) the reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position, and (iii) compensation for lost wages, benefits, and other remuneration, (iv) compensatory damages, (v) punitive

damages, (vi) together with interest thereon, as well as reasonable attorney fees and costs in the amount of TEN MILLION DOLLARS ($10,000,000.00) or some other sum as may be proven by evidence and for such other and further relief as may be just and equitable.

Trial by jury is demanded on all issues on which Ms. Porter is entitled to a trial by jury, including any question concerning whether Ms. Porter's claims must be submitted to arbitration.

Respectfully Submitted,

**LYNSEY ANN PORTER**

_____
Thomas E. Strelka, Esq. (VSB # 75488)
L. Leigh Rhoads, Esq. (VSB # 73355)
VIRGINIA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, Virginia 24018
(540) 283-0802
thomas@vaemployment.law
leigh@vaemployment.law

*Counsel for Plaintiff*