## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

LYNSEY ANN PORTER,          )
                                 )
        Plaintiff,          )
                                 )
v.                             )      Civil Action No. 3:24-cv-909–HEH
                                 )
BLUE RIDGE BANKSHARES, INC..  )
d/b/a "BLUE RIDGE BANK", *et al.*  )
                                 )
        Defendants.      )

### <u>MEMORANDUM OPINION</u>
### (Granting Motion to Dismiss)

THIS MATTER is before the Court on Defendants Blue Ridge Bankshares, Inc., d/b/a

"Blue Ridge Bank" (the "Bank" or "Blue Ridge Bank") and G. William Beale's (collectively

"Defendants") Motion to Dismiss (ECF No. 2). The parties have filed memoranda

supporting their respective positions. The Court will dispense with oral argument because

the facts and legal contentions have been adequately presented to the Court, and oral

argument would not aid in the decisional process.[1] *See* E.D. Va. Loc. R. 7(J). For the

following reasons, the Court will grant Defendants' Motion to Dismiss.

### I. BACKGROUND

On or about January 1, 2023, Blue Ridge Bank hired Plaintiff Lynsey Ann Porter

("Porter")[2] as a Deputy BSA Officer and Financial Crimes Manager. (Compl. ¶ 11, ECF

---

[1] In addition, via an email sent to the Court on February 17, 2025, counsel indicated that all
parties did not prefer to appear for oral argument but would make themselves available if the
Court preferred.
[2] Porter is a current resident and citizen of Florida, and she resided there when this lawsuit was
filed.

No. 1-2). The position was created after the Bank entered into a consent order with an agency within the U.S. Department of the Treasury regarding the Bank's alleged failures to comply with the Bank Secrecy Act, 31 U.S.C. § 5311 *et seq.* According to Porter, her job was "rooted in the notion of federal compliance" and involved reviewing the Bank's accounting practices and reporting failures by the Bank to comply with federal or state law or regulations. (*Id.* ¶¶ 12–13.)

During the course of her employment with the Bank, Porter "reported unlawful activity to her supervisors in good faith at least once a week." (Compl. ¶ 14.) These reports included Porter's assessment that the Bank was failing to comply with both the BSA and federal transparency regulations. *See* 31 U.S.C. 5311 *et seq.*; 31 CFR 501.101-599.901 *et seq.* For example, Porter reported to her supervisors the Bank's "refusal to provide transparency and access to all log entries of audited materials or obtain information for numerous accounting validation errors uncovered in the auditing process" and the Bank's "[l]ack of accounting transparency." (Compl. ¶ 15.) During this time, the Bank frequently dismissed or ignored Porter's reports. (*Id.* ¶¶ 14–15.)

On or about January 1, 2024, one (1) year after Porter began working for the Bank, the acting Chief Risk Officer resigned. (*Id.* ¶ 17.) In response to this resignation, the Bank then offered retention bonuses to members of its staff, including Porter. That same month, "Blue Ridge Bank management informed Ms. Porter that she would receive a promotion as a Vice President of Financial Crimes Customer Risk Manager that provided additional paid time off ('PTO') along with similarly situated co-workers." (*Id.* ¶ 19.)

After receiving this promotion, Porter began reporting to a new supervisor, the Director of Financial Crimes. (Compl. ¶¶ 21–22.) However, despite the promotion, Porter

did not gain additional duties or responsibilities, and she remained in the same department within the Bank. (*Id.*) She also learned that she "had been stripped of discretion in her day-to-day decision-making, had lost authority within the bank, received the same pay as before, did not receive a bonus, and never received additional PTO." (*Id.* ¶ 22.) Other vice presidents within the Bank had previously received raises and bonuses in addition to an increase in PTO balances. (*Id.* ¶ 25.) The Bank's employee handbook also specifies that for a one-year employee such as Porter, a vice president should receive 40 more hours of PTO than employees below the vice president level. (Compl. ¶¶ 26–27.)

Porter learned from the Bank's IT department that her title change to Vice President had not been officially approved. (*Id.* ¶ 28.) Porter raised this issue with her supervisor, and she asked that her title be updated to Vice President, but her supervisor never approved the change. (*Id.* ¶ 29.)

About four (4) months later, in May 2024, "the Director of Financial Crimes verbally informed Ms. Porter that risk assessment results generated by the department had highlighted numerous areas of regulatory violations that had not been corrected," referring to improprieties that Porter herself had previously reported. (Compl. ¶ 30.) Porter again reported these matters to her supervisor, as well as to the Bank's management and the internal audit team. "Ms. Porter was informed that legal counsel would respond to her concerns directly, but she never received a response." (*Id.* ¶ 32.)

Porter came under overwhelming stress that summer from working at the Bank, and she began undergoing counseling services. (*Id.* ¶ 33.) On July 14, 2024, the Bank's Chief Audit Executive emailed Porter informing her that the Bank had concluded its investigation into her report from May 2024 and determined a course of action, that Porter would not be

told the details of the outcome, and that the matter was now closed. (*Id.* ¶ 35.) The Bank's internal audit team also contacted Porter and organized a meeting with her later that summer to discuss her concerns. (*Id.* ¶ 36.) However, the internal audit team cancelled the meeting on July 23 and did not reschedule. (*Id.*) On July 31, Porter emailed the Chief Audit Executive asking if the results of her report had been shared with human resources. (*Id.* ¶ 37.) The Chief Audit Executive replied, "No." (*Id.* ¶ 38.)

On August 2, 2024, Porter resigned. Her reasons for resigning were "unsafe working conditions, an inability to trust her supervisor, and overall, the retaliation she experienced after filing 'a formal whistleblower complaint.'" (Compl. ¶ 41.)

On December 20, 2024, Porter initiated this action in the Circuit Court of the City of Richmond, naming as defendants the Bank and the President and CEO of the Bank, G. William Beale, in his individual capacity. (ECF No. 1.) Porter raised two (2) claims, a violation of Virginia Code § 40.1-27.3 (the Virginia Whistleblower Protection Act) and a wrongful discharge claim based on *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985). Porter requested a total sum of $10,000,000.00 to include compensatory damages, punitive damages, attorney's fees, interest, as well as "an injunction to restrain continued violation of" Code § 40.1-27.3, and "reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position." (Compl. at 11–13.) Defendants then removed the case to this Court on December 30, 2024, and filed a Motion to Dismiss for Failure to State a Claim several days later. (ECF Nos. 1, 2.)

## II. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (internal

quotation marks omitted). For a complaint to be sufficient under Rule 12(b)(6), a plaintiff

must assert "[f]actual allegations" that are "enough to raise a right to relief above the

speculative level" to one that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555, 570 (2007). The facts alleged must be sufficient to "state all the elements of [any]

claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). When

considering a Rule 12(b)(6) motion to dismiss, a court must accept as true all well-pleaded

allegations. *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013).

However, legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).

## III. ANALYSIS

The Virginia Code prohibits an employer from discharging or penalizing an employee

for filing, in good faith, reports to a supervisor about violations of a federal or state law or

regulation. Va. Code § 40.1-27.3. In pertinent part, the statute provides:

> An employer shall not discharge, discipline, threaten, discriminate against, or
> penalize an employee, or take other retaliatory action regarding an employee's
> compensation, terms, conditions, location, or privileges of employment,
> because the employee . . . in good faith reports a violation of any federal or
> state law or regulation to a supervisor or to any governmental body or law-
> enforcement official.

*Id.* Therefore, to state a claim under the statute, a plaintiff must allege facts sufficient to

show that (1) she made a good faith report of a federal or state violation to a supervisor, (2)

she was discharged, penalized, or otherwise suffered relation at the hands of her employer,

and (3) her report was the "but for" cause of the retaliation. *See id.*; *Workman v. LHC Grp.,*

*Inc.*, No. 1:23-cv-048, 2024 WL 3572305, at *3 (W. D. Va. July 29, 2024); *Moore v. Copper*

*River Shared Services, LLC*, No. CL-2023-9565, 2024 WL 366099, at *9 (Va. Cir. Ct. Jan. 30, 2024).

Defendants do not dispute that Porter made good faith reports to her supervisor about suspected violations of a federal law or regulation, which satisfies the first element of her claim. Instead, Defendants argue that Porter fails to satisfy the retaliation and causation elements of her claim because her Complaint fails to show that she was penalized, discharged, or otherwise the victim of retaliation for submitting these reports. Defendants also state that Porter's constructive discharge claim fails as a matter of law under both claims raised in her Complaint.

The Court first addresses whether Porter alleged facts that are sufficient to show she suffered retaliation for filing reports. As the United States Court of Appeals for the Fourth Circuit has held, a plaintiff in a workplace retaliation claim can demonstrate causation by (1) "show[ing] that the adverse act bears sufficient temporal proximity to the protected activity;" (2) "showing 'the existence of facts that suggest[ ] that the adverse action occurred because of the protected activity,'" or (3) a combination of the two. *Britt v. DeJoy*, No. 20-1620, 2022 WL 4280495, at *4 (4th Cir. Sept. 14, 2022) (quoting *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021)). In her brief, Porter claims that she filed reports to her supervisors about the Bank's suspect violations of the BSA and federal regulations and that, because she filed these reports, the Bank demoted her, refused to communicate to her the results of her reports, and eventually forced her to resign due to intolerable work conditions. (Mem. in Opp'n at 11–14, ECF No. 12.)

Taking each argument in turn, the Court finds that Porter failed to allege facts that show Defendants demoted her in retaliation for filing reports. As Porter alleged in her

Complaint, she was hired to review and report violations of the BSA and related regulations. (Compl. ¶¶ 9–16.) During her employment, Porter "reported unlawful activity to her supervisors in good faith at least once a week." (*Id.* ¶ 14.) This continued throughout the first year of her employment, from January 2023 to January 2024. (*Id.* ¶¶ 11, 14, 17–19.) The Bank's offer to promote Porter to a vice president position occurred after "the acting Chief Risk Officer of Blue Ridge Bank resigned" in January 2024. (*Id.* ¶¶ 17–19.) Porter alleges that it was "[n]ot long after Ms. Porter assumed her new role" as a vice president that she learned that she lost discretion in performing her job, that she was not receiving any additional pay or PTO, and that her title was never actually changed to Vice President. (*Id.* ¶¶ 21–22.) In other words, the Complaint shows that Porter had been employed for one (1) year as a BSA officer, that she dutifully performed that role by identifying and reporting suspected violations of federal law, that she was offered a promotion to vice president after a year of such work, but yet, not long after she was offered the promotion in January 2024, it failed to materialize. These facts do not show that Plaintiff was demoted in retaliation for filing good faith reports. Absent from the Complaint are facts showing a change in the status quo between Porter beginning employment in January 2023 and her non-promotion in January 2024. Thus, Porter has not shown temporal proximity between her beginning her practice of filing weekly reports and the Bank's decision to not effect a complete promotion. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) (recognizing that even a time period as short as two months is insufficient to establish temporal proximity for a workplace retaliation claim). Furthermore, Porter has not shown the existence of other facts sufficient to suggest that her alleged demotion occurred because she reported unlawful activity. *See Smith*, 12 F.4th at 417.

The Court has considered Porter's allegations that the Bank frequently ignored her reports, asked her to maintain confidentiality, and refused to inform her about the results of those reports; but these facts do not change the analysis. (Compl. ¶¶ 14, 16, 23, 34.) Porter's Complaint does not show that these alleged actions by the Bank amounted to retaliation against her. *See* Virginia Code § 40.1-27.3 (listing "discharge, discipline, threat[s], discriminat[ion] against, or penal[ties]" as types of retaliatory acts). In addition, these actions do not support a showing that the Bank's failure to promote Porter was retaliatory. Instead, the Complaint shows that the Bank's treatment of Porter's reports, including her allegation that the Bank frequently ignored them, was largely consistent during her first year of employment. Regardless of whether the Bank's behavior was appropriate or commendable, Porter has not adequately alleged that it was retaliation against her for performing the job she was hired to perform.

After Porter's promotion failed to materialize, additional circumstances occurred between May and July 2024 that, Porter argues, ultimately amounted to a constructive discharge. Alternatively, she argues that these additional circumstances may otherwise support a claim for retaliation. First, in May 2024, Porter learned that financial improprieties she had previously reported had still not been corrected. (Compl. ¶ 30.) Porter re-reported these improprieties to her supervisors as well as to "management of the bank, including the internal audit team." (*Id.* ¶ 31.) As a result of this action, Porter alleged, an investigation was initiated, but the Bank would not inform her about its result. She also alleged that the Bank's internal audit team cancelled a meeting with her and that the Chief Audit Executive sent her a curt, single-word reply when she raised this issue to him. (*Id.* ¶¶ 35–36.) Porter further alleged that she experienced overwhelming stress, used counseling services, and that,

8

on August 2, 2024, she resigned due to what she states were intolerable working conditions. (*Id.* ¶¶ 33–41.)

Reviewing these allegations, the Court first finds that the refusal by the Bank's staff to inform Porter about the result of the investigation does not amount to a retaliatory action in violation of the Virginia Whistleblower Protection Act. *See* Va. Code § 40.1-27.3. It does not appear from the Complaint that this action had any effect on Porter's employment. Although this event may have contributed to Porter's stress, there is no plausible indication that the Bank intended to cause such a result or that the Bank should have chosen a different course of action for the sole reason that it might help alleviate Porter's stress. In addition, the Court is not persuaded that the Defendants' other actions, such as cancelling a meeting with Porter and sending a single-word email reply, amount to retaliatory actions in violation of the statute. *See id.* This is true even when all Porter's alleged facts are considered together. Overall, the Complaint does not demonstrate a plausible theory that the Defendants' relatively benign actions amount to retaliation against Porter for filing good faith reports of unlawful activity. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

Furthermore, Porter's attempt to base her whistleblower claim on a theory of constructive discharge fails as a matter of law. Establishing constructive discharge in a retaliation claim requires the plaintiff to allege facts showing that her "working conditions became so intolerable that a reasonable person in [her] position would have felt compelled to resign." *Cooper v. Smithfield Packing Co., Inc.*, 724 F. App'x. 197, 202 (4th Cir. 2018) (citation omitted). This standard is difficult to satisfy, and even "truly awful working conditions may not rise to the level of constructive discharge." *Ratcliff v. Spencer*, No. 1:18-cv-757, 2019 WL 2375131, at *5 (E.D. Va. June 4, 2019) (internal quotation marks omitted).

For example, the Fourth Circuit found that there was "weak evidence, at best, of a constructive discharge" where a plaintiff alleged "dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions." *Carter v. Ball*, 33 F.3d 450, 454, 459–61 (4th Cir. 1994). The working conditions in that case included a supervisor's display of a poster depicting a gorilla which "plaintiff-appellant Paul A. Carter, an African–American," found to be offensive. *Id.* at 454, 461. On the other hand, the Fourth Circuit found intolerable conditions where an employer disregarded a religious objection and required an employee to use equipment that the employee sincerely believed would cause him to be tormented with fire and brimstone. *U.S. Equal Emp. Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 145 (4th Cir. 2017). Porter's allegations here are fairly similar to the allegations of dissatisfaction, unfair criticism, and unpleasant working conditions in *Carter*, and are not "so intolerable that a reasonable person in [Porter's] position would have felt compelled to resign." *Cooper*, 724 F. App'x. at 202. They certainly do not approach the intolerability of the working conditions shown in *Consol Energy, Inc.*, 860 F.3d at 145. Therefore, Porter has failed to allege facts showing that her decision to resign amounted to a constructive discharge.[3]

As to Porter's *Bowman* claim in Count Two of her Complaint, she premises this claim on a theory that her "employment was terminated due to her refusal to perform an illegal act." (Compl. ¶ 59.) It is true that, in general, a *Bowman* claim is a narrow exception to

---

[3] Because these reasons are sufficient to grant Defendants' Motion to Dismiss, the Court need not consider Defendants' additional argument that, even if they did compel Porter to resign, the Virginia Whistleblower Protection Act does not provide a remedy for constructive discharge. (*See* Mem. in Supp. at 6–7, ECF No. 3; *Blair v. The Arc of Loudoun*, Case No. CL23-7023 (Loudoun, Va. Cir. Ct., Mar. 6, 2024) ("Virginia Code Section 40.1-27.3 does not provide a remedy for constructive discharge.").)

Virginia's employment at-will doctrine that allows suits for wrongful termination to proceed under certain circumstances, such as "[w]hen 'the discharge was based on the employee's refusal to engage in a criminal act.'" *Francis v. Nat'l Accrediting Comm'n of Career Arts & Scis., Inc.*, 796 S.E.2d 188, 191 (Va. 2017) (quoting *Mitchem v. Counts*, 523 S.E.2d 246, 252 (Va. 2000)). However, Porter's claim here fails as a matter of law for several reasons. First, Porter hinges her *Bowman* claim on the Defendants' alleged violations of federal laws and regulations, including the BSA. *See* 31 U.S.C. § 5311 *et seq.* However, as federal district courts in Virginia have repeatedly held, *Bowman* claims must be premised on a suspected violation of *state* policy and cannot be premised on a violation of *federal* law. *See, e.g., Lipford v. Eastman Chem. Co.*, 4:23-cv-015, 2023 WL 7027970, at *3 (W.D. Va. Oct. 25, 2023) ("[A] *Bowman* claim cannot be premised on a federal statute."); *Oakley v. May Dep't Stores Co.*, 17 F. Supp. 2d 533, 536 (E.D. Va. 1998) ("[T]he *Bowman* exception to the at-will employment doctrine is predicated on public policies derived from Virginia statutes, not federal laws."). Second, Porter raises a *Bowman* claim premised on an allegation that she "was terminated due to her refusal to perform an illegal act." (Compl. ¶ 59.) However, the Complaint's alleged facts do not substantiate this conclusory statement. Indeed, Porter's Complaint does not show that she was asked to perform an illegal act or that her employment was terminated by the Bank rather than by her resignation. Third, and finally, courts in this district have repeatedly recognized that Virgina has not expanded *Bowman* claims to cover allegations of constructive discharge. *See, e.g., Willis v. City of Virginia Beach*, 90 F. Supp. 3d 597, 606 (E.D. Va. 2015) ("Virginia courts have refused to extend the [*Bowman*] exception even to constructive discharge.") (citations omitted). Thus, for all these reasons,

Porter has failed to state a claim for relief under *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985).[4]

## IV. CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss (ECF No. 2) will be granted. Count One, the claim under Virginia Code § 40.1-27.3, will be dismissed without prejudice for failing to allege facts that state a claim upon which relief can be granted. Count Two, the claim of wrongful discharge under *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985), will be dismissed with prejudice. *See Vinson v. City of Richmond*, No. 3:22-cv-698, 2023 WL 4850172, at *6–10 (E.D. Va. July 28, 2023) (dismissing *Bowman* claim with prejudice when presented with circumstances similar to those here).

An appropriate Order will accompany this Memorandum Opinion.


_____/s/_____
Henry E. Hudson
Senior United States District Judge

Date: July 18, 2025
Richmond, Virginia

---

[4] Porter also filed a Motion for Leave to Amend Complaint (ECF No. 11) on February 2, 2025. Defendants opposed the amendment. (ECF No. 14.) The Court finds (1) that the proposed amended complaint does not alter the substance of her allegations and (2) that the proposed amended complaint does not change the Court's analysis regarding Defendants' Motion to Dismiss. Therefore, the Court will deny the Motion for Leave to Amend Complaint (ECF No. 11) as futile. *See Save Our Sound OBX, Inc. v. N. Carolina Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) ("Courts may deny leave to amend a pleading if the amendment would have been futile.") (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)).